IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WELLS CARGO, INC.,<br>a Nevada corporation,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>TRANSPORT INSURANCE<br>COMPANY, an Ohio corporation,<br><br>　　　　　　Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civ. No. 08-491-E-BLW

MEMORANDUM DECISION
AND ORDER

## INTRODUCTION

The Court has before it Transport Insurance Company's Motion to Dismiss (Docket No. 18).  Alternatively, Transport Insurance Company asks the Court to stay the proceeding pending completion of the state court matter or transfer proceedings to the United States District Court, District of Nevada.  The Court heard oral argument on November 20, 2009, and now issues the following decision.

## BACKGROUND

Wells Cargo, Inc. ("Wells Cargo") is a Nevada corporation with its principle

**Memorandum Decision & Order – page 1**

place of business in Las Vegas, Nevada.  Defendant Transport Insurance Company

("Transport")[1] is an Ohio corporation with its principle place of business in

Cumberland, Rhode Island.  Transport does not maintain offices in Idaho.

This action arises out of Transport's alleged contractual insurance

responsibilities to Wells Cargo for an underlying environmental cleanup claim.

From approximately 1965 to 1967, Wells Cargo conducted mining operations on

United States National Forest Service ("USFS") land in Caribou Country, Idaho.

Between the approximate years of 1958 through 1984, Transport issued insurance

policies to Wells Cargo.  However, neither party has located copies of any

insurance policies in effect prior to 1972.

On or about February 27, 2004, Wells Cargo received a letter from the USFS

naming it a Potentially Responsible Party ("PRP Letter") for the release of

hazardous substances at Wells Cargo's former mining site.  In September 2005,

Wells Cargo notified Transport of its potential liabilities and requested Transport

to defend and indemnify Wells Cargo for liabilities incurred.  Eventually,

Transport agreed to defend Wells Cargo subject to a complete reservation of rights.

To this date, Transport has not made a payment to Wells Cargo for the costs

---

[1]Transport Insurance Company is a corporation formally known as Transport Indemnity Company.  This opinion refers to both Transport Insurance Company and Transport Indemnity Company as "Transport."

**Memorandum Decision & Order – page 2**

incurred in the underlying environmental cleanup action.

Wells Cargo alleges that the insurance policies cover its underlying Idaho environmental liability action.  To determine the existence of the alleged policies and the parties' obligations, Wells Cargo and Transport filed suit.  Initially, Transport filed suit in California state court, but the California court dismissed the claims for lack of personal jurisdiction.  Transport has appealed the decision.  Before the California suit was decided, Wells Cargo brought suit in this Court.  In response, Transport brought suit in Nevada state court.  The Nevada court dismissed the case without prejudice.

## ANALYSIS

### I.    Transport's Motion to Dismiss for Lack of Personal Jurisdiction

In Transport's motion to dismiss under Fed. R. Civ. P. 12(b)(2), Wells Cargo bears the burden of proving that jurisdiction is appropriate.  *See Boschetto v. Hansing*, 539 F.3d 1011. 1015 (9th Cir. 2008); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 1990).  Where, as here, the motion is based on written materials rather than an evidentiary hearing, Wells Cargo need only establish a prima facie showing of jurisdictional facts to withstand the motion.  *See Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995).

In addressing this motion to dismiss, the Court must take Wells Cargo's

**Memorandum Decision & Order – page 3**

uncontroverted allegations in the complaint as true and resolve factual disputes in affidavits in its favor.  *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).  However, where Transport offers evidence in support of its motion, Wells Cargo may not simply rest on the bare allegations of its complaint.  *See Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc*., 551 F.2d 784, 787 (9th Cir. 1977).  Instead, Wells Cargo must come forward with facts, by affidavit or otherwise, in response to Transport's version of the facts.  *See Id.*

Where there is no applicable federal statute governing personal jurisdiction, such as in this case, the law of the state in which the district court sits applies.  *See Schwarzenegger*, 374 F.3d at 800.  Because Idaho's long-arm statute, codified in Idaho Code § 5-514, allows a broader application of personal jurisdiction than the Due Process Clause, the Court need look only to the Due Process Clause to determine personal jurisdiction.[2]  Thus, under Idaho law, the jurisdictional analysis

---

[2] In *Lake v. Lake*, 817 F.2d 1416, 1420 (9th cir. 1987), the 9th Circuit determined that the Idaho legislature, in adopting I.C. § 5-514, "intended to exercise all the jurisdiction available to the State of Idaho under the Due Process Clause of the United States Constitution."  *Lake*, 817 F.2d at 1420. The Idaho Supreme Court had so held, and continued to so hold for a few years after the *Lake* decision was rendered.  *Houghland Farms v. Johnson*, 803 P.2d 978 (Idaho 1990). More recently, however, the Idaho Supreme Court has, without commenting on this precedent, instituted a two-part test for resolving long-arm jurisdiction questions. The Court first looks at whether the defendant's conduct falls within the terms of the statute, and then looks to see whether exercising jurisdiction would comport with the Due Process Clause.  In two cases, the Idaho Supreme Court has held that the defendant's conduct did fall within I.C. § 5-514, but that jurisdiction could not be exercised consistently with the Due Process Clause.  *See e.g., Smalley v. Kaiser*, 950 P.2d 1248 (Idaho 1997); *Saint Alphonsus v. State of Washington*, 852 P.2d 491 (Idaho 1993).  These decisions imply that I.C. § 5-514 reaches beyond the limits of due process,

**Memorandum Decision & Order – page 4**

and federal due process analysis are the same.

The exercise of personal jurisdiction over a defendant comports with federal due process only if the defendant "has certain minimum contacts with the relevant forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). Sufficient minimum contacts can result in general or specific jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). General jurisdiction applies if the defendant's activities in the forum "are substantial, continuous and systematic," whereas specific jurisdiction applies if a defendant's "less substantial contacts with the forum give rise to the cause of action before the court." *Id.*

In this case, Wells Cargo contends that Transport's contacts with the State of Idaho give rise to specific jurisdiction. The Ninth Circuit analyzes specific jurisdiction according to a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the

---

and that the Idaho Supreme Court must use the Due Process Clause to rein in the statute's grasp. Thus, the interpretation of I.C. § 5-514 in *Lake* appears no longer accurate. The result, however, is the same – the Due Process Clause sets the limit, but the Idaho Supreme Court's new two-part test recognizes that the reach of the statute is not identical with the reach of the Due Process Clause.

**Memorandum Decision & Order – page 5**

> forum or resident thereof; or perform some act by which
> he purposefully avails himself of the privilege of
> conducting activities in the forum, thereby invoking the
> benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to
> the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair
> play and substantial justice, i.e. it must be reasonable.

*Yahoo! Inc.*, 433 F.3d at 1205-06 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  Wells Cargo bears the burden of satisfying the first two prongs of the test.  *See Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007).  If Wells Cargo succeeds in satisfying the first two prongs, the burden then shifts to Transport to "'present a compelling case' that the exercise of jurisdiction would not be reasonable."  *See Id.* (quoting *Schwarzenegger*, 374 F.3d at 802).

## A.    Purposeful Availment

The first prong of the specific-jurisdiction test is satisfied when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  *Loral Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 560, (9th Cir. 1995) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  In determining whether the first  prong has

**Memorandum Decision & Order – page 6**

been met, the Ninth Circuit distinguishes between cases arising out of tort and those which arise out of contract.  While a pruposeful direction analysis is used in tort cases, *see Schwarzenegger*, 374 F.3d at 802-03, a purposeful availment analysis is used in contract cases.  *See Boschetto*, 539 F.3d at 1016; *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991); *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 817 (9th Cir. 1988).

The Ninth Circuit has determined that an insurance company purposefully avails itself of the right to do business in a state when its policy coverage area extends into that state and an insured event occurred therein.  *Farmers Insurance Exchange v. Portage La Prairie Mutual Insurance Co.*, 907 F.2d 911, 913 (9th Cir. 1990).  In *Farmers*, the personal jurisdiction issue arose when a vehicle insured by Portage La Prairie Mutual Insurance Company ("Portage") was involved in a traffic accident in Montana.  *Id.* at 912.  After Portage refused to indemnify the driver, Farmers Insurance (the driver's insurer) settled the case.  *Id.*  Subsequently, Farmers Insurance brought suit against Portage in Montana for bad faith and breach of contract.  *Id.*  In response, Portage claimed it was not subject to suit in Montana, because it was a foreign insurer which had issued no policies and had no agents in Montana.  *Id.*  Also, the insured vehicle was primarily located in Alberta, Canada, and was only temporarily in Montana.  *Id.*

**Memorandum Decision & Order – page 7**

The Ninth Circuit found that "Portage's territorial policy limit included Montana within its scope" and, as such, "Portage controlled its own amenability to suit." *Id.* at 914.  Thus, the court held that Portage could reasonably anticipate being haled into Montana court or any forum within the coverage area where an insured event occurred.[3]  *Id.*; *see also Payne v. Motorists' Mut. Ins. Co.*, 4 F.3d 452, 456 (6th Cir. 1993); *Rossman v. Consolidated Ins. Co.*, 832 F.2d 282, 286 (4th Cir. 1987).

At first blush, this may seem at odds with the Supreme Court's holding that "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."  *World-Wide Volkswagen*, 444 U.S. at 295.  In *World-Wide Volkswagen*, the Supreme Court concluded that selling an automobile in New York did not signal a willingness to be haled into an Oklahoma court where the purchaser had driven the vehicle.  *Id.* at 297-98.  However, insurance cases like the this one are distinguishable from the Supreme Court's holding in *World-Wide Volkswagen*.  In *Farmers Insurance*, the Ninth Circuit noted that unlike automobile sellers,

---

[3] In *Hunt v. Erie Insurance Group*, the Ninth Circuit held that including a state within an insurer's coverage territory cannot "be fairly characterized as an act by which [the insurer] has pruposefully availed itself of the privilege of conducting activities in [that state]."  728 F.2d 1244, 1247 (9th Cir. 1984).  What distinguishes the present case from Hunt is that Idaho is the site of the allegedly insured event.  *See Farmers Ins.*, 907 F.2d at 914.

**Memorandum Decision & Order – page 8**

> [I]nsurers contract to indemnify and defend the insured for
> claims that will foreseeably result in litigation in foreign states.
> Thus litigation requiring the presence of the insurer is not only
> foreseeable, but it was purposefully contracted for by the
> insurer.  Moreover, unlike a product seller or distributor, an
> insurer has the contractual ability to control the territory into
> which its "product" – the indemnification and defense of claims
> – will travel.

*Farmers Insurance*, 907 F.2d at 914.

Here, the facts are similar to *Farmers Insurance*, where the critical factors were policy coverage extending into the forum and an insured event occurring in the forum.  Wells Cargo provides evidence that effective May 1, 1966 and June 1, 1967, Transport provided insurance to Wells Cargo.  (Anderson Decl. Exs. E, F, and G).  Wells Cargo also provides evidence that the 1966 policy was "rewritten" effective May 1, 1966, suggesting that there was a policy prior to May 1, 1966. (Anderson Decl. Ex. H).  Transport provides no evidence to the contrary.

According to Wells Cargo, the policies covered losses arising in Idaho. (Complaint ¶ 14 & Docket No. 28, p. 11-12).  To support its allegation that the coverage area included Idaho, Wells Cargo provides an example of a 1970s liability insurance agreement between Wells Cargo and Transport which applies to loss, damage, or injury within the United States.  (Anderson Decl. Ex. J at Part Four, Conditions A; Docket No. 30, p. 9).  A policy of that breadth would clearly

**Memorandum Decision & Order – page 9**

cover a mining site located in Idaho.

Wells Cargo also provides evidence that in 1966 Transport paid at least two claims submitted by Wells Cargo for losses near Soda Springs, Idaho.  (Anderson Decl. Ex. T & U).  Although the exact policies have not been located, Wells Cargo's submissions provide evidence that the insurance policies in dispute covered activities arising in Idaho during the years in which Wells Cargo conducted mining operations there.  Transport provides no evidence that the insurance area did not cover Idaho.

Finally, Wells Cargo alleges that the underlying environmental cleanup action is an insured event at its former Idaho mining site.  (Complaint ¶ 18 & 19).  Again, Transport provides no evidence disputing Wells Cargo's claim.

The Court must take Wells Cargo's uncontroverted allegations in the Complaint as true and resolve factual disputes in its favor.  *See Dole Food* 303 F.3d at 1108.  Assuming as true Wells Cargo's allegations that the policy coverage area extended into Idaho and the environmental cleanup action is an event which occurred in Idaho, the Court concludes that the first prong of the specific jurisdiction test is satisfied.

### B.    Relatedness

"[A] single forum state contact can support jurisdiction if the cause of action

arises out of that particular purposeful contact of the defendant with the forum

state." *Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (citing *Yahoo! Inc.*,

433 F.3d at 1210) (internal quotation marks omitted).  Here, Wells Cargo's breach

of contract action clearly arises from Transports' purposeful contact with Idaho in

insuring losses there.   *See, e.g., Hirsch v. Blue Cross, Blue Shield of Kan. City*,

800 F.2d 1474, 1480-81 (9th Cir. 1986) (Contract constituted defendant's contacts

with forum state for purposes of relatedness element of the limited jurisdiction

test.).  Accordingly, the second prong of the specific jurisdiction test is satisfied.

### C.    Reasonableness

Because Wells Cargo has satisfied the first two prongs of the test for specific

jurisdiction, the burden shifts to Transport "to 'present a compelling case' that the

exercise of jurisdiction would not be reasonable."  *Menken*, 503 F.3d at 1057

(quoting *Schwarzenegger,* F.3d 374 at 802).  To determine the reasonableness of

exercising jurisdiction over a defendant, the court considers the following factors:

> (1) the extent of the defendant's purposeful interjection
> into the forum state's affairs; (2) the burden on the
> defendant of defending in the forum; (3) the extent of
> conflict with the sovereignty of the defendant's state; (4)
> the forum state's interest in adjudicating the dispute; (5)
> the most efficient judicial resolution of the controversy;
> (6) the importance of the forum to the plaintiff's interest
> in convenient and effective relief; and (7) the existence of
> an alternative forum.

**Memorandum Decision & Order – page 11**

*Id*. (quoting *CE Distrib., LLC v. New Sensor Corp*., 380 F.3d 1107, 1112 (9th Cir. 2004)).

As to the first factor, some cases in the Ninth Circuit "have suggested that once the minimum contacts threshold is met the degree of intrusion into the forum becomes irrelevant." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993) (citing *Corporate Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 787 (9th Cir. 1987)).  Nonetheless, other cases provide that "[e]ven if there is sufficient 'interjection' into the state to satisfy the [purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness." *Core-Vent Corp*., 11 F.3d at 1488 (9th Cir. 1993) (quoting *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981)) (alterations in original).

In this case, Transport's contacts with the state of Idaho appear limited to the insurance policies covering Wells Cargo's Idaho activities.  Beyond its insurance relationship with Wells Cargo, Transport does not transact business within the state of Idaho.  However, litigation requiring the presence of Transport was clearly envisioned by its insurance contract with Wells Cargo.  *See Farmers Insurance*, 907 F.2d at 914.  "Moreover, [Transport] had the ability to control the territory into which its 'product' – the indemnification and defense of claims – [would] travel."  *Id.*  Thus, the first factor weighs in favor of exercising personal

**Memorandum Decision & Order – page 12**

jurisdiction over Transport.

Regarding the second factor, the Court acknowledges that Transport, as an Ohio corporation with its principle place of business in Rhode Island, may be burdened by litigating this case in Idaho.  However, "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past."  *Menken*, 503 F.3d at 1060 (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004)).  Indeed, the Ninth Circuit provides that even where a defendant must travel from a foreign country, "this factor is not dispositive" as to the reasonableness of exercising personal jurisdiction.  *Dole Food,* 303 F.3d at 1115 (citing *Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988)).  Therefore, although this factor is in Transports's favor, the Court does not find it to be very compelling.

As for the third factor, the Court is not aware of any conflict with the sovereignty of Rhode Island or Ohio.  However, the fourth factor weighs in favor of exercising personal jurisdiction over Transport because Idaho has a strong interest in ensuring that financial resources exist so that Idaho environmental injuries are remedied.  Further, Idaho has an interest in providing a forum for businesses who suffer economic harm in Idaho.  *AMRESCO Commercial Finance, LLC v. T.P. Sampson Co.*, 2005 WL 1863285 at 6.  Thus, the fourth factor weighs

**Memorandum Decision & Order – page 13**

heavily in favor of exercising personal jurisdiction over Transport.

With respect to the fifth and sixth factors, which bear upon the efficient and effective resolution of the case, Transport argues that the PRP letter is the only evidence relating to the case which has any tie to Idaho.   Transport contends that substantially more evidence will undoubtedly be located in Nevada, since that is the location of Wells Cargo's principal offices.   However, no specific support for that contention is provided.  Thus, there is no clear indication that another state would provide a more convenient, efficient or effective forum for the resolution of this controversy.  *Menken*, 503 F.3d at 1061.  Therefore, factors five and six are neutral or weigh in favor of exercising personal jurisdiction over Transport.

Regarding the final reasonableness factor, Transport filed a complaint, regarding the same claims and issues, in both California and Nevada state courts. Wells Cargo concedes that it "cannot show that its claims cannot be effectively remedied in Nevada or elsewhere." (Anderson Decl. Ex. B).  Therefore, this factor weighs against exercising personal jurisdiction over Transport.  *See CE Distrib*., 380 F.3d at 1112.  However, like factor two, this carries little weight.

Ultimately, although several of the foregoing factors may favor Transport, the more compelling factors favor Wells Cargo.  Thus, the Court concludes that Transport has not presented a "compelling case" that the exercise of personal

**Memorandum Decision & Order – page 14**

jurisdiction over it would be unreasonable.  *See Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1324 (9th Cir. 1998) (Although some factors weigh in defendant's favor, defendant failed to present a compelling case that the court's exercise of jurisdiction would be unreasonable).  Indeed, "[t]he only case in which the Supreme Court has held that these factors determined the question of personal jurisdiction was in a suit between two foreign corporations in which the Court divided evenly over whether the minimum contacts were sufficient."  *Menken*, 503 F.3d at 1063 n. 1 (9th Cir. 2007) (Bybee, J., concurring) (*citing Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 107 (1987)).  Accordingly, the Court will deny Transport's motion to dismiss for lack of personal jurisdiction.

## II.     Transport's Motion to Dismiss or, in the Alternative, to Transfer Based on Improper Venue

Wells Cargo bears the burden of proving that venue is appropriate in its motion to dismiss under Fed. R. Civ. P. 12(b)(3).  *See Schenck v. Motorcycle Assessory Warehouse, Inc.*, 2007 WL 1138915 at 1 (D. Idaho 2007) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)).  However, there is a strong presumption in favor of Wells Cargo's forum choice.  *See Ravelo Monegro v. Rosa,* 211 F.3d 509, 513 (9th Cir. 2000).  Analysis of a Rule 12(b)(3) permits the court to consider facts outside the pleadings.

**Memorandum Decision & Order – page 15**

*Argueta v. Banco Mexicano, S. A.*, 87 F.3d 320, 324 (9th Cir. 1996).  Disputed

facts must be viewed in the light most favorable to the non-moving party.  *Murphy*

*v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1138 (9th Cir. 2004).  The Court must

draw all reasonable inferences and resolve all factual disputes in favor of the non-

moving party.  *Id.*

### A.    Section 1391(c)

Under 28 U.S.C. § 1391(c), "a defendant that is a corporation shall be

deemed to reside in any judicial district in which it is subject to personal

jurisdiction at the time the action is commenced."  In its brief, Transport concedes

that if personal jurisdiction is found, venue is proper.  (Docket No. 19, p. 13).  As

explained above, personal jurisdiction is proper.  Thus, venue is proper.

### B.    Forum Non Conveniens

Transport argues that even if venue is proper in the District of Idaho, the

case should nonetheless be transferred to Nevada under principles of *forum non*

*conveniens*.  The governing statute states that "[f]or the convenience of parties and

witnesses, in the interest of justice, a district court may transfer any civil action to

any other district or division where it might have been brought."  28 U.S.C.

§ 1404(a).  Transport must make a "strong showing" of inconvenience to warrant

upsetting Wells Cargo's choice of venue.  *See Decker Coal Co. v. Commonwealth*

**Memorandum Decision & Order – page 16**

*Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  As part of this inquiry, a court may

consider the following: (1) the location where the parties negotiated and executed

the agreement; (2) the state most familiar with the governing law, (3) plaintiff's

choice of forum, (4) each parties' contacts with the forum, (5) contacts related to

the plaintiff's claim in the forum, (6) the different costs of litigation between the

two forums, (7) availability of compulsory process for unwilling non-party

witnesses, and (8) ease of access to proof sources.  *Jones v GNC Franchising*, Inc.,

211 F.3d 495, 498-499 (9th Cir. 2000).  Relevant public policy of the forum state is

also "at least as significant a factor in the § 1404(a) balancing."  *Id.*

Here, not all of these factors apply, but the ones that do favor Idaho as the

proper forum.  Specifically, although the insurance policy at issue was negotiated

and executed in California and/or Nevada, Idaho represents Wells Cargo's forum

choice.  Moreover, it seems likely that Idaho law will govern this insurance

dispute.  That is so because "[i]n a diversity case, the district court must apply the

choice-of-law rules of the state in which it sits."  *Abagados v. AT&T, Inc.*, 223

F.3d 932, 934 (9th Cir. 2000).  In resolving a conflict of law issue, Idaho, like most

states, applies the most significant relationship test.  *Seubert Excavators, Inc., v.

Anderson Logging Co.*, 126 Idaho 648, 651 (Idaho 1995).  "The goal of this test is

to identify the state most significantly related to a particular issue and to apply its

**Memorandum Decision & Order – page 17**

law to resolve that issue." *Id*.  Although Wells Cargo resides in Nevada, Idaho was the location of the mining activity, the insured risk, and the underlying environmental cleanup litigation.  Thus, it would appear that Idaho has a more significant relationship to this dispute than does Nevada.  If Idaho law is applied, then having the dispute resolved in a court which is more familiar with that law would be a factor weighing heavily in favor of Wells Cargo's forum choice.

At least as significant, public policy in this case weighs heavily in favor of Idaho because Idaho has a strong interest in ensuring that financial resources exist to remedy alleged environmental injuries within Idaho.  Further, Idaho has an interest in providing a forum for businesses who suffer economic harm in Idaho. *AMRESCO*, 2005 WL 1863285 at 6.  Thus, when Wells Cargo, who did business in Idaho, brings suit in Idaho alleging an insurance company's failure to perform its obligations with respect to an Idaho environmental cleanup site, the state of Idaho has a great interest.  Nevada has no comparable interest in the issues which will be resolved in this dispute.

Finally, Transport makes a half-hearted suggestion that it would be easier to offer proof and compel witnesses to attend in Nevada.  However, Transport fails to explain or give sufficient evidentiary support as to why this would be the case. Aside from Transport's unsupported allegations, there is no indication that Nevada

**Memorandum Decision & Order – page 18**

would be a better venue. Transport also fails to explain why Nevada would be a more cost effective forum. Therefore, Transport has failed to make a "strong showing" of inconvenience to warrant upsetting Wells Cargo's choice of venue. Accordingly the Court will deny the motion.

### III.    Transport's Motion to Dismiss, or in the Alternative Stay, Pursuant to *Wilton* and *Brillhart*.

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Supreme Court has described the Declaratory Judgment Act as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). Usually, it is uneconomical and vexatious for a federal court to proceed in a declaratory judgment suit when there is an exact parallel state proceeding. *Smith v. Lenches,* 263 F.3d 972, 978 (9th Cir. 2001) (quoting *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942). However, a pending state court action does not require a district court to refuse federal declaratory relief. *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc). "There is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage

**Memorandum Decision & Order – page 19**

cases specifically." *Id.*

Typically, the Ninth Circuit has "applied the principle that 'when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief.'" *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1112 (9th Cir. 2001) (quoting *Dizol*, 133 F.3d at 1225). To determine whether jurisdiction over actions with both declaratory and monetary claims remains discretionary, the Ninth Circuit instructs courts to "determine whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case." *Id.* (quoting *Snodgrass v. Provident Life and Acc. Ins. Co.*, 147 F.3d 1163, 1167-68 (9th Cir. 1998) (per curiam). Thus, the question is whether the court "has subject matter jurisdiction over the monetary claim alone, and if so, whether that claim must be joined with one for declaratory relief." *Id.*

Here, this Court's subject matter jurisdiction over the breach of contract claim is not in dispute. Therefore, the question is whether that claim can be sustained in federal court absent any claim for declaratory relief. If it can, then

**Memorandum Decision & Order – page 20**

under the "general rule" explained in *Dizol*, this Court would abuse its discretion if it dismisses the declaratory relief claim.

Applying basic contract law, Wells Cargo could have brought a breach of contract claim against Transport without the declaratory relief claim.  *See Idaho Power Co. V. Cogeneration, Inc.*, 9 P.3d 1204, 1213 (Idaho 2000) (plaintiff bears the burden of proving the existence and breach of the contract).  Nothing in the record suggests that the breach of contract claim must attach to the declaratory relief claim.  Wells Cargo makes the basic assertion that Transport is liable to it under a contractual obligation. Therefore, the breach of contract claim "invoke[s] the virtually unflagging obligation of the district court to hear jurisdictionally sufficient claims."  *Snodgrass*, 147 F.3d at 1167 (Internal quotations and citations omitted); *see also Dizol*, 133 F.3d at 1226, n. 6 (Because a claim for breach of contract provides an independent basis for federal diversity jurisdiction, the district court is without discretion to decline to entertain the declaratory judgment claim).  Thus, the Court finds that it is required to retain jurisdiction over the declaratory judgment claim in this matter.

Moreover, even if the Court had discretion to decline jurisdiction over the declaratory judgment claim, the Court would not do so.  When a district court has discretion to dismiss or retain a declaratory judgment claim, guidance for making

**Memorandum Decision & Order – page 21**

that determination is found in *Brillhart* and its progeny.  *Dizol*, 133 F.3d at 1223.

The primary factors a court should consider are: (1) avoiding needless

determination of state law issues; (2) discouraging litigants from filing declaratory

actions as a means of forum shopping; and (3) avoiding duplicative litigation.  *Id.*

at 1225.

Here, because no case was filed in Idaho state court, federal jurisdiction over

the declaratory judgment claim does not involve needless determination of state

law issues.  As explained above, application of the most significant relationship

test suggests that Idaho law will apply in this case.  Although Wells Cargo resides

in Nevada, Idaho was the location of the mining activity, the insured risk, and the

underlying environmental cleanup litigation.  Thus, according to the record, no

other state has a more significant relationship than Idaho.  Because Idaho law will

most likely apply in this case, and nothing has been filed in the  Idaho state courts,

this Court's decisions in this case will not constitute a needless resolution of state

law.

With respect to the second *Brillhart* factor – discouraging litigants from

filing declaratory actions as a means of forum shopping – the Court notes that each

party accuses the other of forum shopping.  Initially, Transport filed suit in

California state court.  Wells Cargo reacted by filing suit in Idaho federal court.

**Memorandum Decision & Order – page 22**

After the California case was dismissed and this matter had commenced, Transport filed suit in Nevada state court.  Although it appears that each party may have engaged in forum shopping, the fact that Idaho was the location of the mining activity, the insured risk, and the underlying environmental cleanup, suggests that the selection of Idaho was not an improper effort to select a favorable forum.

The final *Brillhart* factor is the avoidance of duplicative litigation.  Here, the case which was originally filed in California state court is on appeal to the California Court of Appeals.  The other potentially duplicative case was dismissed without prejudice by the Nevada state court.  These are not the type of duplicative cases that warrant dismissal.  Neither of these cases will cause duplicative case preparation or present the danger of inconsistent verdicts.  Thus, judicial economy favors retention of the declaratory judgment claim in this case.

Finally, the Ninth Circuit has stated that the *Brillhart* factors are not exhaustive.  *Dizol*, 133 F.3d at 1225, n. 5.  Therefore, although not discussed as one of the factors to consider in the *Brillhart* analysis, the circumstances here present policy consideration of some importance for the state of Idaho.  The Ninth Circuit has recognized that "[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulations."

**Memorandum Decision & Order – page 23**

*Reinsurance Corp. v. Karussos*, 65 F.3d 796, 799 (9th Cir. 1995) (overruled on other grounds by *Dizol*, 133 F.3d at 1227 (en banc).  Therefore, when Wells Cargo, who did business in Idaho, alleges a breach of contract and seeks declaratory relief under an insurance company's failure to perform its obligations with respect to an Idaho environmental cleanup site, the state of Idaho has a substantial interest. Nevada and California have no such significant interest. Therefore, because there is no pending Idaho state matter, public policy favors this Court exercising its discretion to retain jurisdiction.  Accordingly, the Court will deny Transport's motion.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (Docket No. 18) shall be, and the same is hereby, DENIED.



DATED:  **December 13, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge