UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WELLS CARGO, INC., a corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>TRANSPORT INSURANCE COMPANY, a corporation,<br><br>    Defendant. | Case No. 4:08-CV-00491-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Plaintiff Wells Cargo, Inc.'s Motion for Partial Summary Judgment, or Alternatively for Declaratory Relief, Regarding Retrospective Premium Endorsement (Dkt. 124), Transport Insurance Company's Motion for Partial Summary Judgment Regarding Retrospective Premium (Dkt. 125), Plaintiff's Motion to Stay (Dkt. 133), and Plaintiff's Motion to Strike Declaration of Expert Witness James A. Robertson, or in the Alternative for Leave to Make a Supplemental Submission in the Event Any Expert Testimony is Allowed (Dkt. 142). The Court heard oral argument on the motions on May 15, 2012. The Court then allowed supplemental briefs, which were fully submitted to the Court by June 8, 2012. The Court now issues its decision.

## BACKGROUND

**MEMORANDUM DECISION AND ORDER - 1**

The United States Forest Service brought a CERCLA action arising out of environmental pollution and contamination at the North Maybe Mine in Southeast Idaho. Plaintiff Wells Cargo is a party to the CERCLA action because it conducted mining operations at the mine from 1965 to 1967. Wells Cargo seeks coverage from Transport Insurance under several policies Transport issued to Wells Cargo between 1961 and 1985. Wells Cargo seeks a declaration that Transport is required to defend and indemnify it for the CERCLA action, as well as an award of damages for breach of contract.

The Court and the parties agreed to phase the litigation. During phase I, the parties resolved the missing policy issue through stipulation. Next, the Court addressed three issues: (1) whether Transport has a duty to defend Wells Cargo in the underlying environmental proceeding under the Transport policies; (2) whether the amounts associated with and paid in connection with the Remedial Investigation and Feasibility Study ("RI/FS") constitute defense costs or indemnity costs under the terms of the Transport policies; and (3) the applicable law that will be applied to the two foregoing issues. The Court determined that Idaho law applies, that Transport does have a duty to defend Wells Cargo, and that RI/FS costs are defense costs.

The Court and the parties then agreed to address whether the case should be stayed, and the interpretation of the retrospective premium endorsements attached to the Transport insurance policies. Those issues are now before the Court.

## LEGAL STANDARD

**1.    Summary Judgment Legal Standard**

MEMORANDUM DECISION AND ORDER - 2

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . .." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any material fact - a fact "that may affect the outcome of the case." *Id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id*. at 255.  Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

When cross-motions for summary judgment are filed, the Court must independently search the record for factual disputes. Fair Housing Council of Riverside *County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of

MEMORANDUM DECISION AND ORDER - 3

cross-motions for summary judgment - where both parties essentially assert that there are no material factual disputes - does not vitiate the court's responsibility to determine whether disputes as to material fact are present. *Id*.

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id*. at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

## ANALYSIS

**1.      Cross-Motions for Partial Summary Judgment on Retrospective Premium**

Wells Cargo and Transport filed competing motions for partial summary judgment related to the retrospective premium endorsement. Wells Cargo seeks partial summary judgment on Transport's affirmative defense based on a retrospective premium endorsement. Wells Cargo argues that Transport does not have the right now to charge Wells Cargo any additional retrospective premium. Alternatively, Wells Cargo seeks a

**MEMORANDUM DECISION AND ORDER - 4**

declaration that the terms of the retrospective premium endorsement do not permit Transport to make any retrospective premium adjustment at this stage of the proceedings.

Transport seeks partial summary judgment confirming that Transport is entitled to charge retrospective premiums pursuant to a formula set forth in the insurance policies. Transport asks the Court to declare that the retrospective premium endorsements are enforceable, and that the Transport policies permit Transport to calculate and charge retrospective premium arising out of Wells Cargo's alleged liability in the underlying administrative action according to the terms and conditions of the retrospective premium endorsements.

A retrospective premium endorsement is a way to make an insurance premium payment more accurately reflect the actual loss and cost experience of the insured. It allows the insurer and the insured to hedge their bets; the insurer avoids having to bear all of the cost of a catastrophic loss not anticipated by its underwriting procedures, while the insured avoids paying the higher up-front premium which would be necessary in the absence of such a provision. In the most basic terms, if the retrospective earned premium is less than the standard premium charged over the specified time period, the insured is entitled to a credit, but if it is less than the standard premium, the insured must pay the difference.

Here, the parties have stipulated that both the 1961 and 1966 insurance policies included a retrospective premium endorsement, but they disagree on how they apply. As the Court stated in its earlier opinion, Idaho law applies to this case. Therefore, before

MEMORANDUM DECISION AND ORDER - 5

addressing the language of the policies – specifically the retrospective premium endorsement language – the Court will analyze the Idaho Supreme Court decisions which tell us how insurance contracts are to be interpreted.[1]

### A. *Idaho Supreme Court Precedent on Insurance Contracts*

The Idaho Supreme Court has made clear that the question of whether an insurance policy is ambiguous is a question of law for the court to determine. *Farm Bureau Mutual Insurance Co. Of Idaho v. Schrock*, 252 P.3d 98, 102 (Idaho 2011) (citing *Cherry v. Coregis Insurance Co.*, 204 P.3d 522, 524 (Idaho 2009)). A court must ask whether a policy is reasonably subject to conflicting interpretations in order to determine whether it is ambiguous. *Id*. If the language of the policy is clear and unambiguous, then it will be given its ordinary and plain meaning. *Id*. That's the easy part.

The more difficult question is what the Court should do if the language is unclear and ambiguous. In those instances, the Idaho Supreme Court has stated that "[a]ny ambiguities should be resolved in favor of the insured, and where language may be given two meanings, one of which permits recovery while the other does not, the policy should be given the construction most favorable to the insured." *Cherry*, 204 P.3d at 524. The justification for favoring the insured is the assumption that insurance policies are

---

[1] As discussed below, the Court has determined that the policies are not ambiguous with respect to whether they were cancelled. Thus, it is not absolutely necessary that the Court clarify Idaho law regarding interpretation of an ambiguous insurance contract in Idaho. However, because the issue has come up several times in this case already, and likely will come up again, the Court finds it appropriate to clarify and explain its understanding of Idaho Supreme Court precedent on the issue.

**MEMORANDUM DECISION AND ORDER - 6**

contracts of adhesion which are not typically subject to negotiation. *Schrock*, 252 P.3d at 102.

However, the Idaho Supreme Court has also indicated that when interpreting insurance contracts, a court should apply general rules of contract law. *Clark v. Prudential Property And Casualty Ins. Co.*, 66 P.3d 242, 244 (Idaho 2003). Thus, the Idaho Supreme Court has stated that "[t]o determine the meaning of an ambiguous contract, the trier of fact must determine what a reasonable person would have understood the language to mean and the words used must be construed given their ordinary meaning." *Id*. at 245

At first blush, *Clark* appears to suggest that resolving ambiguities in insurance contracts should be left to the fact finder – typically a jury. But unfortunately the Idaho Supreme Court's final determination in *Clark* is not all that helpful because the court ultimately found that the insurance policy was unambiguous. *Id*. Therefore, it did not wrestle with how to interpret ambiguous contract language.

However, the Idaho Supreme Court did indicate that when applying the general rules of contract law to an insurance contract, they are "subject to certain special canons of construction." *Id*. at 244. Those special canons of construction include the admonition that "ambiguities must be construed most strongly against the insurer," and "[t]he burden is on the insurer to use clear and precise language if it wishes to restrict the scope of coverage, and exclusions not stated with specificity will not be presumed or inferred." *Id*. at 245. Thus it seems that *Clark*, like *Cherry* and *Schrock*, stands for the proposition that

**MEMORANDUM DECISION AND ORDER - 7**

if an insurance contract is ambiguous, the court itself should resolve that ambiguity in favor of coverage.

Additionally, in 2008 the Idaho Supreme Court again referenced the language in *Clark* that when interpreting insurance contracts, the court should apply general contract law rules subject to special canons of construction. *Arreguin v. Farmers Insurance Co. Of Idaho*, 180 P.3d 498 500 (Idaho 2008). In *Arreguin*, the district court granted summary judgment in favor of the insurance company, finding that the term outbuildings unambiguously included a detached garage. According to the insurance policy, outbuildings were not covered. The Idaho Supreme Court reversed and remanded the case back to the district court, finding that the term outbuildings was ambiguous. *Id*. at 502. The court did not specifically state whether the determination of the term outbuildings should be submitted to a jury or whether the district court should simply rule in favor of the insured on the coverage issue. However, the court also addressed whether the insured had notice that the insurance company considered his detached garage an outbuilding. The district court had determined that the insured had notice of lack of insurance coverage for his detached garage because the insurance company had previously denied a claim for damages to the garage. *Id*. The court surmised that the district court's finding likely was a factual finding that the insured did have notice. The court then decided that it would be improper for it to consider such a factual finding. In doing so, the court cited the language from other Idaho Supreme Court cases that "[w]hen a contract is ambiguous, the interpretation of the contract terms presents a question of fact." *Id*. The court stated that

**MEMORANDUM DECISION AND ORDER - 8**

"the degree to which [the insured's] previous notice that [the insurance company] considered the detached garage excluded from coverage should inform the interpretation of the term 'outbuildings' is a question of fact and not a matter to be resolved on summary judgment." *Id*.

Based on these decisions, the Court finds that although the Idaho Supreme Court has used some imprecise language in describing the standard for interpreting insurance contracts, its recent decisions confirm that "all ambiguities in an insurance policy are to be resolved against the insurer." *Cherry*, 204 P.3d at 526. Moreover, the Court interprets the Idaho Supreme Court's decisions to require that the Court, not a jury, resolve an ambiguity in favor of the insured. That is what the Idaho Supreme Court did in *Cherry*, and this would seem to be the most appropriate approach. It would make little sense for a court to make the initial determination on whether an insurance policy is ambiguous – which the Idaho Supreme Court unequivocally states the court must do – and then if the court finds that it is ambiguous, ask the jury to resolve that ambiguity, but with an instruction that it must do so by resolving it in favor of the insured. Because ambiguities *must* be resolved in favor of the insured, it makes much more sense for the court to simply make that determination if and when it determines that the contract is ambiguous. The only issues which should be left to a jury for interpretation are factual determinations that inform the interpretation of an ambiguous term like those addressed in *Arreguin*. *Arreguin*, 180 P.3d at 502.

    **B.**    *The Policies were Cancelled*

MEMORANDUM DECISION AND ORDER - 9

A Retrospective Premium Determination Agreement Endorsement is attached to the 1961 and 1966 policies. *Joint Stipulation of Lost Policy Terms*, Ex. A, p. 10, Dkt. 64-1. Section I of the endorsement is a list of definitions, Section II is the formula for determining the retrospective earned premium, Section III is a list of conditions for the endorsement, and Section IV is a cancellation clause. Condition 5 of Section III explains what happens if the policy to which the endorsement is attached is cancelled. Condition 6 explains what happens if the policy to which the endorsement is attached has not been cancelled. The parties dispute what is meant by "cancelled," and whether the policies were cancelled. This, in turn, dictates whether Condition 5 or Condition 6 applies.

According to the Idaho Supreme Court precedent discussed above, the Court's first step is to determine whether the term "cancelled" is ambiguous. To make that determination, the Court must ask whether the policy is reasonably subject to conflicting interpretations. *Farm Bureau Mutual Insurance Co. Of Idaho v. Schrock*, 252 P.3d 98, 102 (Idaho 2011).

The stipulated and undisputed facts in this case lead one to the inescapable conclusion that all four policies were cancelled. First, both parties agree that Transport issued polices to Wells Cargo in 1961, 1966, 1972 and 1978. Second, although the term "cancelled" is not defined in the policies, and the parties dispute its meaning, they do not dispute that the 1978 policy was cancelled by any definition of the term when Transport notified Wells Cargo of its cancellation in 1985. *Joint Stipulation of Lost Policy Terms*, Ex. G, p.62 (Dkt. 64-8). Third, the parties stipulate that each policy was issued from a

MEMORANDUM DECISION AND ORDER - 10

date certain "until cancelled." *Joint Stipulation of Lost Policy Terms*, Ex. E, p.2 (Dkt. 64-5); *Pl.'s Supplemental Brief*, p.5, Dkt. 161. And Fourth, the parties stipulate to an effective end date for each policy – the 1961 policy ended on May 1, 1966, the 1966 police ended on September 1, 1972, the 1972 policy ended on October 1, 1978, and the 1978 policy ended on April 5, 1985. *Joint Stipulation of Lost Policy Terms*, pp. 2, 7, 12, & 14, (Dkt. 64). Reading these stipulations together require the conclusion that the 1961 policy was "cancelled" on May 1, 1966, the 1966 policy was "cancelled" on September 1, 1972, and the 1972 policy was "cancelled" on October 1, 1978.

Moreover, Wells Cargo's alternative interpretation is unreasonable. Wells Cargo suggests that each of the polices constituted a separate contract, which, when renewed to cover successive policy periods, continued the contractual relationship between the two parties beyond the issuance of the successor policy. In this view, only the 1978 policy was cancelled. However, unless each policy was cancelled, they would overlap each other, provide cumulative coverage, and still be in effect today. But we know from the parties' stipulations that they are not still in effect. Rather, the parties have agreed that each policy continued "until cancelled," and ended on a date certain – the very date the subsequent policy went into effect. *Joint Stipulation of Lost Policy Terms*, pp. 2, 7, 12, & 14, (Dkt. 64).

Accordingly, the Court finds that the only reasonable interpretation of the insurance contracts is that each policy was "cancelled" when a successor policy took effect or the policy was expressly cancelled by one of the parties. This, in turn, requires

**MEMORANDUM DECISION AND ORDER - 11**

the conclusion, as a matter of law, that the cancellation policy language is unambiguous and that the policies were cancelled. Accordingly, condition 5 applies and the retrospective premium endorsements are enforceable. However, that does not mean that Transport may, at this point in the litigation, calculate and charge retrospective premium arising out of Wells Cargo's alleged liability. Transport's demand for immediate reimbursement of defense costs is premature.

Condition 5 provides that "upon demand," Wells Cargo "will reimburse [Transport] for any additional charges resulting from the settlement of any known or unknown losses in accordance with the Formula for DETERMINING RETROSPECTIVE EARNED PREMIUM as defined in Section II herein." *Joint Stipulation of Lost Policy Terms*, Ex. A, p. 14, Dkt. 64-1. Because condition 5 restricts Transport's claim to charges "resulting from the settlement of" the CERCLA Action, Transport cannot calculate or demand reimbursement of such charges until settlement occurs.

**2.    Motion to Strike**

Wells Cargo asks the Court to strike the declaration of expert witness James A. Robertson. Having determined that the policy language is unambiguous, but that Transport cannot demand reimbursement at this time, Mr. Robertson's testimony is of no consequence now. Accordingly, the motion will be deemed moot.

**3.    Motion to Stay**

Wells Cargo asks the Court to stay the indemnity phase of this action until completion of the RI/FS and the Forest Service's publication of its Record of Decision.

MEMORANDUM DECISION AND ORDER - 12

The standard for determining whether a stay is appropriate is generally committed to the discretion of the district court. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). However, citing the Supreme Court's decision in *Landis v. North American Co.*, 299 U.S. 248 (1936), the Ninth Circuit indicates that the Court should weigh the competing interests which will be affected by granting or refusing to grant a stay. Those interests include: (1) possible damage which may result from granting a stay; (2) the hardship or inequity a party may suffer if forced to proceed; (3) and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Id.* at 1110 (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

      Here, the Court finds that Wells Cargo has shown a clear case of prejudice in its ability to defend the North Maybe Mine claim if the stay is not granted. More specifically, the Court finds that Wells Cargo's coverage defenses in this case are intertwined with the underlying CERCLA action. Thus, Wells Cargo's defenses in the CERCLA action may be undermined if forced to litigate the coverage issues at this point, and Wells Cargo should not be forced to engage in a two-front war fighting both its insurance carrier and defending itself against the allegations in the cleanup action. The Court notes that there may be portions of this litigation which could be addressed at this point without creating conflict for Wells Cargo, but it simply is not plausible to carve out those portions in any meaningful way. Ultimately, the Court finds that the lion's share of the issues presented in this coverage action depend to some degree on when the alleged

**MEMORANDUM DECISION AND ORDER - 13**

property damage occurred, who is responsible, and the extent of contamination. These are the very issues being addressed in the underlying case, and the risk of forcing Wells Cargo to take inconsistent positions by simultaneously litigating liability and coverage is too great.

Additionally, the RI/FS will likely determine whether there is evidence of contamination and the source thereof which is critical to the indemnification issue. Addressing those issues now in this coverage suit would be judicially inefficient. It makes much more sense to wait for the Record of Decision before litigating those matters here.

Finally, a stay will not prejudice Transport. The only real potential for prejudice is the potential loss of testimony from witnesses who may become incapacitated or otherwise unavailable. However, there is no evidence that this is a real risk. Still, if Transport can provide the Court with specific concerns about individuals from whom it may not be possible to obtain testimony in the near future, the Court will consider allowing limited depositions. As for Transport's suggestion that "[m]ost people cannot remember what they did two weeks ago let alone remember the details of what they did in 1965," it makes little difference then whether they are deposed now or after the RI/FS. For these reasons, the Court will grant the stay.

## ORDER

**IT IS ORDERED:**

1. Plaintiff Wells Cargo, Inc.'s Motion for Partial Summary Judgment, or Alternatively for Declaratory Relief, Regarding Retrospective Premium

**MEMORANDUM DECISION AND ORDER - 14**

      Endorsement (Dkt. 124) is **DENIED in part and GRANTED in part**. Condition 5 applies and the retrospective premium endorsements are enforceable. However, Transport cannot calculate or demand reimbursement of such charges until settlement of the CERCLA Action occurs.

2.   Transport Insurance Company's Motion for Partial Summary Judgment Regarding Retrospective Premium (Dkt. 125) is **GRANTED in part and DENIED in part**. Condition 5 applies and the retrospective premium endorsements are enforceable. However, Transport cannot calculate or demand reimbursement of such charges until settlement of the CERCLA Action occurs.

3.   Plaintiff's Motion to Stay (Dkt. 133) is **GRANTED**.

4.   Plaintiff's Motion to Strike Declaration of Expert Witness James A. Robertson, or in the Alternative for Leave to Make a Supplemental Submission in the Event Any Expert Testimony is Allowed (Dkt. 142) is **DEEMED MOOT**.

DATED: **July 31, 2012**

B. LYNN WINMILL
Chief U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 15**